IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CRIMINAL NO. 07-00226-CG |
| | ) | |
| LAVOID MACIO KENT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

**I.     INTRODUCTION**

This matter is before the court on defendant, Lavoid Macio Kent's FED. R. CRIM. P. 29

motion for judgment of acquittal, the government's response to the motion, Kent's supplemental

authority in support of the motion, and a joint stipulation of facts.  (Docs. 29, 30, 33, and 34).

The court heard oral argument on Thursday, November 1, 2007.  For the reasons more fully set

forth below, the court **GRANTS** the motion based on Kent's argument that applying the statute

under which he is charged in this case would run afoul of the Constitution's prohibition of ex

post facto laws.

**II.     FACTS**

Kent was indicted in Mobile, Alabama, for Sex Abuse First Degree and pleaded guilty on

March 27, 2000.  (Doc. 29, ¶ 3).   The court in that case advised Kent, presumably at the hearing

during which Kent entered his guilty plea, that he would have to register as a sex offender with

the Mobile County Sheriff and maintain his registration for life.  (Id.).  Kent registered as a sex

offender with Mobile County on March 31, 2000.  (Doc. 29, ¶ 4).  During the registration

process, Kent was notified of his obligations to tell the Mobile County Sheriff's Office of any

changes in his address ten days before they became effective and to renew his registration

annually.  (Id.).  Kent provided a Mobile, Alabama, address at that time.

After scuffles with the law that tend to show Kent remained living in Mobile in 2002 or

2003, a warrant was issued for Kent's arrest in 2004 for failing to renew his sex offender

registration.  (Doc. 29, ¶¶ 5 and 6).  Kent was arrested on May 25, 2007, in New Orleans,

Louisiana.  (Doc. 29, ¶ 7).  Information discovered during the arrest and during a subsequent

investigation show that Kent moved across state lines from Alabama to Louisiana, in interstate

commerce, in 2002.  (Id.).  There is nothing in the stipulation of facts to show that Kent traveled

in interstate commerce after 2002 or 2003, although pages four through five of Kent's brief say

that the parties agree the last time Kent traveled in interstate commerce was in 2004.

A federal grand jury returned a one-count indictment against Kent on July 26, 2007.

(Doc. 5).  The indictment charges Kent with violating 18 U.S.C. § 2250(a) ("§ 2250") by, having

traveled in interstate commerce,  failing to register and update a registration as required by the

Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 et seq., which

required Kent to register as a sex offender by reason of his conviction of Sexual Abuse in the

First Degree in Mobile after traveling in interstate commerce.  (Id.).

III.    THE PARTIES' ARGUMENTS

Kent raises several arguments in support of his motion for acquittal, including the

argument that prosecuting him under § 2250 would violate the ex post facto clause of the

Constitution "because the Government cannot prove that any interstate travel by the defendant

post-dated the enactment of SORNA and 18 U.S.C. § 2250."  (Doc. 30-3, ¶ 2).  Because the

court agrees with this argument, and with defendant's argument that SORNA requires the

interstate travel to occur after the statutes enactment,  it declines to address the other arguments

Kent raises in support of his motion.

The thrust of Kent's ex post facto argument is simple.  He argues that at the time he

committed all of the acts that subject him to prosecution  under § 2250 and its ten-year felony

sentence, § 2250 did not exist.  Rather, at the time he committed his crime, the acts that gave rise

to Kent's current indictment could be federally prosecuted as a one-year misdemeanor under 42

U.S.C. § 14072.  Thus, Kent claims that prosecuting him under the more severe § 2250 subjects

him to a more onerous punishment than could have been imposed when he committed the acts

that first gave rise to the offense, in violation of the ex post facto prohibition.  Kent cites several

district court cases from around the country to support his argument.  Kent also argues that a

recent United States Supreme Court case that interpreted the registration and notification

requirement in Alaska's Sex Offender Registration Act, Smith v. Doe, 538 U.S. 84 (2003),

should not guide the outcome of his motion because "the issue in that case was whether Alaska's

civil registration requirements were in fact punitive." (Doc. 30, p. 8).

The government opposes Kent's motion on three central grounds.  First, the government

points out that § 2250 is part of the larger SORNA.  The entirety of SORNA, viewed as a whole,

is a civil rather than criminal statute and so none of its sections are subject to an ex post facto

challenge.  The government relies, at least in part, on the Smith case to support application of

this argument to SORNA and § 2250.  Second, the government argues that, even if SORNA is

punitive, Kent could not, by definition, have met the elements of the indicted crime until after

SORNA became effective.  The government argues that SORNA does not regulate interstate

travel but, more specifically, it outlaws the knowing failure to register "under SORNA" after

moving between states.  It was impossible, the government concludes, for Kent knowingly to fail

to register "under SORNA" until after SORNA was passed.  The statute's application can never

be retrospective because "the conduct required to complete the offense will necessarily occur

after SORNA's effective date in every case."  (Doc. 33, pp. 6-7).  Third, the government argues

that violation of § 2250 is a continuing offense, and thus not subject to the ex post facto

prohibition.  (Id., p. 8).

## IV.   DISCUSSION

The government seeks Kent's criminal conviction under § 2250, which provides:

(a) In general.  Whoever –

> (1) is required to register under the Sex Offender Registration and
> Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex
> Offender Registration and Notification Act by reason of a
> conviction under Federal law (including the Uniform Code of
> Military Justice), the law of the District of Columbia, Indian tribal
> law, or the law of any territory or possession of the United States;
> or
>
> (B) travels in interstate or foreign commerce, or enters or leaves,
> or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required
> by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

§ 2250 is a section of SORNA, which is itself Title I to the Adam Walsh Child Protection

and Safety Act of 2006 ("Adam Walsh Act"), enacted on July 27, 2006.  Pub. L. No. 109-248.

Pursuant to SORNA, a sex offender who is required to register under the Act, who travels in

interstate commerce, and knowingly fails to register or update a registration as required under

SORNA shall be fined or imprisoned for not more than ten years, or both.  SORNA replaces a

similar statute, codified at 42 U.S.C. § 14072 ("§ 14072"), which would have subjected Kent, a

first-time offender, to not more than one year of imprisonment for the same conduct that gave

rise to his indictment under SORNA.  § 14072 was passed in 1994 and is still on the books

today.  See Pub. L. No. 109-248, Title I, Subtitle A, § 129(a) (repealing § 14072 in the future).

Both parties agree that Kent's failure to register when he moved to Louisiana violated §

14072.  (Doc. 33, p. 7 and Doc. 30, p. 4).  Had Kent been prosecuted for his conduct prior to July

27, 2006[1], which the parties agree he could have been, the worst penalty he would have faced

was one year in prison.  Because Kent was arrested and indicted for those same acts - however

they are described or categorized in the respective statutes - after SORNA's enactment on July

27, 2006, he now faces a possible 10-year sentence.

### A.      The proper focus is on § 2250, not on SORNA as a whole.

The United States Constitution provides that neither Congress nor any state may pass any

"ex post facto Law."  "[T]he constitutional prohibition on ex post facto laws applies only to

penal statutes. . ."  Collins v. Youngblood, 497 U.S. 37, 41 (1990).  As a consequence, the legal

analysis properly begins with a consideration of whether the statute is criminal or civil.  Smith,

538 U.S. at 92.

---

[1]The court recognizes that the Attorney General did not exercise his authority under
SORNA to apply SORNA to sexual offenders convicted prior to the Act's enactment until
February 28, 2007.   42 U.S.C. § 16913(d) and 28 C.F.R. Part 72.3.  Considering that all of
Kent's relevant activity occurred both prior to the date SORNA was enacted, (July 27, 2006),
and prior to  February 28, 2007 when the Attorney General determined to apply it to individuals
whose threshold sexual convictions occurred before SORNA was passed, the court refers to the
July 27, 2006 date.

> If the intention of the legislature was to impose punishment, that ends the inquiry.
> If, however, the intention was to enact a regulatory scheme that is civil and
> nonpunitive, we must further examine whether the statutory scheme is "'so
> punitive either in purpose or effect as to negate [the State's] intention' to deem it
> 'civil.'"

Id. (alteration in original, citations omitted).

In this case, § 2250 is clearly a criminal, punitive statute.  As the court previously held in

this case: "it is obvious that 18 U.S.C. § 2250 was meant to be punitive, hence the possible ten

year sentence.  Therefore 18 U.S.C. § 2250 is subject to an ex post facto analysis."  (Doc. 23, p.

4)[2].  Neither party disagrees with this conclusion, but the government's first argument calls for

the court to view the inquiry of whether the statute at issue is criminal or civil with a wider lens.

The government argues that the inquiry should apply to SORNA as a whole, not to the isolated

provision of the Act contained in § 2250.  From this starting point, the government urges the

court to find that § 2250 is a civil statute not subject to an ex post facto analysis because it is part

of a civil regulatory scheme similar to the Act addressed in Smith.

The Smith case is distinguishable.  In Smith, two sex offenders ("respondents") brought

an action under 42 U.S.C. § 1983.  They sought to have the court declare that an Alaska statute,

the May 12, 1994 Alaska Sex Offender Registration Act (the "Alaska Act"), which required

certain sex offenders to register with the state and for the state to notify the public of the

registrations, was void as to the respondents because they were convicted of sexual offenses

before the Alaska Act was passed.  Id. at 89-91.  The only issue before the court was whether the

registration and notification scheme, by itself, violated ex post facto.  Id. at 89.  Although failure

---

[2]Judge DuBose of this court authored the prior order.  The case was subsequently
transferred to the undersigned for administrative reasons.

to comply with the statute could result in criminal prosecution, nothing in the <u>Smith</u> case

indicates that the respondents were facing criminal prosecution or jail time for failing to comply

with the registration and notification scheme.  <u>Id</u>. at 90.  In fact, <u>Smith</u> referenced two statutes

that provide criminal penalties for failing to register under the Alaska Act, Alaska Stat. §§

11.56.835 and 11.56.840.  The opinion did not address what impact, if any, either of those

statutes had on its analysis despite the fact that one of those statutes, § 11.56.840, was enacted as

part of the Alaska Act before the court.  <u>See</u> 1994 Alaska Sess. Laws ch. 41, § 2[3].

   In short, the government's reliance on <u>Smith</u> is misplaced because the case only

addresses whether sex offender registration and notification statutes are subject to an <u>ex</u> <u>post</u>

<u>facto</u> challenge.  The <u>Smith</u> court decided that such statutes are not subject to <u>ex</u> <u>post</u> <u>facto</u>

challenges, but based the holding on its conclusion that the registration and notification scheme

was neither intended to be punitive nor had a sufficiently punitive effect to negate the

legislature's intention to pass a nonpunitive statute.  <u>Smith</u>, 538 U.S. at 92-106.

   In this case, neither party disputes that § 2250 is a criminal, punitive statute.  In order for

<u>Smith</u> to guide this court's analysis, then, the court would have to read § 2250 in the broader

context of the larger Act of which it is a part.  The government provides the court with no

support for its argument that the court should do so when deciding whether Kent is being

criminally prosecuted under a civil statute.  The <u>Smith</u> case on which the government relies only

addresses the sections of the Alaska Act that the respondents challenged.  Although the case

referenced the fact that a sex offender could be criminally prosecuted for failing to comply with

---

[3]Apparently, the Alaska legislature did not pass § 11.56.835, which provides certain enhancements to § 11.56.840, until later.  1998 Alaska Sess. Laws. Ch. 106, § 1.  The criminal statute contained in § 11.56.840 was also amended in 1998.  <u>Id</u>. at § 2.

the Alaska Act, the threat of criminal prosecution did not have any stated bearing on the court's

conclusion that the challenged registration and notification scheme was not punitive.

Indeed, although the Supreme Court has held that a challenged statute did not create a

more onerous, retrospective, punishment for a criminal defendant because the statute was part of

a legislative scheme that, on the whole, made the challenged statute ameliorative, Dobbert v.

Florida, 432 U.S. 282, 295-96 (1977) (comparing a prior statutory scheme used to determine

whether a defendant would receive the death penalty after conviction of first degree murder to its

replacement scheme "in toto" to determine whether the new scheme was more onerous than was

the prior scheme), it has also declined an invitation to examine a challenged statute "in

conjunction with other provisions enacted with it" because the other provisions did not alter the

fact that "the new provision . . . makes more onerous the punishment for crimes committed

before its enactment."  Weaver v. Graham, 450 U.S. 24, 34-36 (1981).  See also Miller v.

Florida, 482 U.S. 423, 431-34 (1987) (distinguishing the holding in Dobbert and rejecting the

objection "that it is misleading to view the change in the revised guidelines apart from the

sentencing scheme as a whole.").

The government does not direct the court to any cases requiring the court to consider the

entirety of SORNA to determine whether the government is prosecuting Kent under a civil

statute.[4]  The cases above show that a challenged statute should be considered in the context of a

statutory scheme when, for example, reference to the scheme sheds light on whether the

---

[4] The court recognizes that there are a number of district court cases that have found that
prosecution under §2250 does not violate the ex post facto prohibition.  Those cases that the
court has found either rely on Smith, without further analysis, or are based on factual scenarios
which exempt the prosecution from ex post facto consideration.

challenged statute subjects a criminal defendant to additional punishment.  In this case, there is

no question that § 2250 is a punitive, criminal statute that will subject Kent to more onerous

punishment than did its predecessor.  There is no need to refer to the remainder of SORNA to

determine whether § 2250 is punitive and more onerous than its predecessor.

In addition, the ex post facto prohibition is intended to ensure that individuals have "fair

warning" of the criminal laws under which their actions may be prosecuted and also to

"restrain[] arbitrary and potentially vindictive legislation."  Weaver, 450 U.S. at 28-29.  Relying

on the entire enactment rather than, in this case, the codified section of the criminal code would

seem to undercut the first intention.  Allowing the shielding criminal laws from ex post facto

analysis by including them in otherwise regulatory acts would seem to undercut the second

intention.  See United States v. Bobby Smith, 481 F. Supp. 2d 846, 853 (E.D. Mich. 2007) ("The

Government's attempt to hide the enhanced penalties in § 2250 under the greater 'civil' purpose

of SORNA runs afoul of the longstanding rule that 'the ex post facto effect of a law cannot be

evaded by giving a civil form to that which is essentially criminal.'") (quoting Burgess v.

Salmon, 97 U.S. 381, 385 (1878)).

Even if the court was inclined to accept the government's argument, the government does

not explain how the court should address the differences between the statute at bar and the

Alaska Act.  The legislation that enacted SORNA is different from the legislation that enacted

the Alaska Act at issue in Smith v. Doe in two readily-apparent respects.  First, unlike the Alaska

Act, SORNA has three Subtitles: (A) Sex Offender Registration and Notification; (B) Improving

Federal Criminal Law Enforcement To Ensure Sex offender Compliance With Registration and

Notification Requirements and Protection of Children From Violent Predators; and ©) Access to

Information and Resources Needed To Ensure That Children Are Not Attacked or Abused.  §

2250 is part of Subtitle (B), the title of which indicates that Congress intended for § 2250 to be a

criminal, not civil, law for the enforcement of the presumably civil laws passed in Subtitles (A)

and ©).  Second, SORNA is Title I to the larger Adam Walsh Act.  Title III of the Adam Walsh

Act is entitled "Civil Commitment of Dangerous Sex Offenders."  The structure of SORNA and

of the Adam Walsh Act tends to show that Congress intended for portions of the Act to be civil

and for others to be criminal. Other than its reliance on Smith, which addressed an act that does

not specifically refer to certain portions as criminal and others civil, the government does not

offer its view on a proper interpretation of the legislative scheme at issue in this case.

The court concludes that the proper focus of this case is on § 2250 specifically, not on

SORNA or the Adam Walsh Act as a whole.  Because § 2250 is a punitive, criminal statute, it is

subject to Kent's ex post facto challenge.  The Smith case, which involved a civil statutory

scheme, is distinguishable.

      **B.**      **Application of § 2250 to this case would violate the prohibition of <u>ex post</u> <u>facto</u> laws.**

As the Supreme Court explains,

> Our understanding of what is meant by <u>ex post facto</u> largely derives from the case
> of <u>Calder v. Bull</u>, 3 Dall. 386, 1 L.Ed. 648 (1798), in which this Court first
> considered the scope of the <u>ex post facto</u> prohibition.

***

> "1st.  Every law that makes an action done before the passing of the law, and
> which was innocent when done, criminal; and punishes such action. 2d.  Every
> law that aggravates a crime, or makes it greater than it was, when committed.  3d.
> Every law that changes the punishment, and inflicts a greater punishment, than
> the law annexed to the crime, when committed.  4th.  Every law that alters the
> legal rules of evidence, and receives less, or different testimony, than the law
> required at the time of the commission of the offense, in order to convict the

10

offender."

Miller v. Florida, 482 U.S. 423, 429 (1987) (omitting original emphasis).  The court summarized

the law of ex post facto again in 1925 by stating:

> "It is settled, by decisions of this Court so well known that their citation may be
> dispensed with, that any statute which punishes as a crime an act previously
> committed, which was innocent when done; which makes more burdensome the
> punishment for a crime, after its commission, or which deprives one charged with
> crime of any defense available according to law at the time when the act was
> committed, is prohibited as ex post facto."

Collins, 497 U.S. at 42 (quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)).  In other words,

"Legislatures may not retroactively alter the definition of crimes or increase the punishment for

criminal acts."  Collins, 497 U.S. at 43.  "Although increased punishments are not mentioned

explicitly in the historical sources, the Court has never questioned their prohibition, apparently

on the theory that the enhancement of a crime, or penalty, seems to come within the same

mischief as the creation of a crime or penalty."  Collins, 497 U.S. at 44 (internal citation and

quotations omitted).

"[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it

must be retrospective, that is, it must apply to events occurring before its enactment, and it must

disadvantage the offender affected by it."  Weaver, 450 U.S. at 29.  See also Miller, 482 U.S. at

430 (quoting Weaver).  There is no question that § 2250, which increases the punishment for

Kent's crime by a factor of ten, disadvantages him.  Supreme Court cases further interpret the

meaning of the "retrospective" factor in Weaver.

In Weaver, the state of Florida altered its rules that relieve prisoners of a portion of their

prison sentences for good conduct and obedience, which it called "gain time."  Id. at 25.  In

summary, the statute in effect when the petitioner committed and was convicted for his crime

provided more gain time for good conduct than did their replacement, which was enacted

roughly two years after the petitioner's crime and conviction.  Id. at 25-26.  The petitioner

argued that application of the new statute to his case was ex post facto.  The Supreme Court of

Florida disagreed, but the United States Supreme Court reversed in favor of the petitioner.  Id. at

27-28.

The respondent argued that the new statute was not retrospective because it only applied

after its effective date.  Id. at 31.  The court rebuked the argument, saying it "fail[ed] to

acknowledge that it is the effect, not the form, of the law that determines whether it is ex post

facto.  The critical question is whether the law changes the legal consequences of acts completed

before its effective date."  Id.  The new statute attached "consequences to a crime committed

before the law took effect."  Id.

> For prisoners who committed crimes before its enactment, [the new statute]
> substantially alters the consequences attached to a crime already completed, and
> therefore changes the quantum of punishment.  Therefore, it is a retrospective law
> which can be constitutionally applied to petitioner only if it is not to his
> detriment.

Id. at 33 (quotations and citations omitted).  In a subsequent case holding that more onerous

sentencing guidelines could not be applied to a defendant who committed his crime before the

guidelines were enacted, the Supreme Court subsequently summarized Weaver as holding that

"[a] law is retrospective if it 'changes the legal consequences of acts completed before its

effective date.'"  Miller, 482 U.S. at 430 (quoting Weaver, 450 U.S. at 31).

As indicated above, the parties to this case agree that, at the time Kent committed the acts

that provide the factual basis for his indictment in this case, the applicable federal statute

provided for a maximum one-year sentence.  Those acts, all of which occurred before § 2250's

"effective date" subject Kent to a new "legal consequence" of ten years of imprisonment.  There

is no question that application of § 2250 to Kent changes the legal consequence of actions he

took prior to § 2250's enactment.

Two of the government's arguments attempt to avoid the conclusion that § 2250 is

retrospective.  First, the government argues that "the conduct required to complete the offense

will necessarily occur after SORNA's effective date in every case" because Kent could not

knowingly fail to register "under SORNA" before SORNA was passed.  (Doc. 33, p. 6-7).

Second, the government argues that violation of SORNA is a continuing offense.  (Id., p. 8).

The government's first argument elevates form over function.  In order for the argument

to prevail, this court would have to agree with the proposition that Kent's failure to register after

he moved to Louisiana was not "under SORNA" because SORNA did not exist at that time.

Much like the respondent's argument in Weaver, the government's argument "fails to

acknowledge that it is the effect, not the form, of the law that determines whether it is ex

post facto.  The critical question is whether the law changes the legal consequences of acts

completed before its effective date."  Weaver, 450 U.S. at 31.  § 2250 is not shielded from

Kent's ex post facto challenge because it punishes Kent for failing to register "under SORNA"

rather than for failing to register under the provisions of § 14072.  A new statutory definition or

categorization for Kent's misdeeds does not detract from the proper focus on the actions Kent

took to draw the government's attention: traveling in interstate commerce and failing to register.

Both parties concede that, prior to the enactment of § 2250, the government could have

prosecuted Kent under § 14072 for these acts.  It is these acts that are the focus of the analysis.

The Legislature's new definition or categorization of them in the section of the statute that Kent

challenges as <u>ex post facto</u> has no bearing on this court's analysis. <u>See also California Dep't of Corrections v. Morales</u>, 514 U.S. 499, 506 n.3 (1995) (one focus of <u>ex post facto</u> is whether the change "alters the definition of criminal conduct.").

The government's other argument, that violation of § 2250 is a "continuing offense," also does not carry the day. The government argues that a statute does not run afoul of the <u>ex post facto</u> clause when the crime began prior to, but continued after, the statute outlawing it became effective. Under the government's theory, the defendant commits a new crime each day he fails to register after the passage of SORNA, because the duty to register is a "continuing violation." However, as the Supreme Court pointed out in <u>Toussie v. United States</u>, 397 U.S. 112, 119, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), when addressing the argument that failure to register for the draft was a continuing offense for purposes of the statute of limitations, "[t]here is also nothing inherent in the act of registration itself which makes failure to do so a continuing crime. Failing to register is not like a conspiracy which the Court has held continues as long as the conspirators engage in overt acts in furtherance of the substantive evil Congress sought to prevent." The cases on which the government relies to support this argument are distinguishable. In <u>United States v. Brady</u>, 26 F.3d 282 (2d Cir. 1994), the defendant challenged, on <u>ex post facto</u> grounds, the 1986 felon-in- possession-of-a-gun statute under which he was charged. <u>Id</u>. at 291. Unlike Kent, the defendant in that case argued that his 1951 felony conviction could not satisfy the "felon" element of the "felon in possession" conviction he challenged. Although the defendant's prior felony conviction predated the 1986 statute, the "possession of a gun from which the current conviction [arose] occurred on June 10, 1992." <u>Id</u>. The crime, therefore, was not complete until 1992, after the criminal statute was passed, avoiding a successful <u>ex post facto</u>

challenge.  Another of the government's cited cases, <u>United States v. Pfeifer</u>, 371 F.3d 430 (8th

Cir. 2004), cited <u>Brady</u> to reach the same conclusion based on the same statute.  It summarized

as follows:

> The critical factor in these decisions is that the prohibited conduct - possession of
> a firearm - occurred after enactment of the statute. . . . It is immaterial that the
> predicate offense occurred before [the felon in possession statute] was enacted.  A
> law is not retroactive simply because it draws upon antecedent facts for its
> operation.

<u>Id</u>. at 436 (citations and quotations omitted).  Kent's <u>ex post facto</u> challenge is not based on the

argument that his prior conviction of a successful offense occurred before SORNA was enacted,

it is based on the argument that all of the facts necessary to make the criminal case against him

occurred before SORNA was enacted.

United States v. Alkins, 925 F.2d 541 (2d Cir. 1991), and <u>Russell v. Gregoire</u>, 124 F.3d

1079 (9th Cir. 1997), are similarly unhelpful to the government's case because, like the felon- in-

possession cases, both focus on the fact that the elements of the crime were not met until after

the statutes at issue were passed.  In <u>Alkins</u>, the defendants were charged with mail fraud.  The

challenged counts alleged that the defendants processed fraudulent documents prior to the

effective date of the mail fraud statute, but the documents were mailed after the effective date of

the mail fraud statute.  <u>Alkins</u>, 925 F.2d at 548.  Because the defendants could have acted "to

prevent the final element of the crime from occurring" after the mail fraud statute was passed by

alerting the recipient of the mail that it contained fraudulent documents, the convictions did not

violate <u>ex post facto</u>.  <u>Id</u>. at 549.  In <u>Russell</u>, the criminal defendants, who were required to

register as sex offenders under a state statute that was passed after they committed their

qualifying crimes, brought a lawsuit claiming that the registration and notification provisions

violated their constitutional rights.  Russell, 124 F.3d at 1082.  The criminal defendants sought

declaratory and injunctive relief.  Id.  Not only is this case very similar to the Smith case, and

consequently distinguishable, the court also held similarly to the Brady and Pfeifer  felon-in-

possession cases addressed above, and recognized that there is no ex post facto problem when a

prior conviction is an element of the offense, as long as other conduct relevant to the offense

occurs after the law is passed.  Id. at 1088-89.  In Kent's case, every element of the offense

occurred prior to SORNA's passage.

United States v. Wilson, 210 F.3d 230 (4th Cir. 2000), is closer to the mark, but also

misses.  The defendant was indicted under a statute that was passed on June 24, 1998, "for

willfully failing to pay more than $ 10,000 in past due support obligations."  Id. at 231.  As the

indictment indicates, the defendant had to be, in relevant part, over $ 10,000 past due to trigger

the statute, which provided for up to two years' imprisonment.  Id. at 232.  The statute's

predecessor was triggered at $ 5,000 and a first offense was punishable by six months'

imprisonment.  Id.  Although the parties agreed that the defendant accrued over $ 10,000 in

unpaid support before the new version of the statute was enacted and that the defendant had not

accrued more than $ 10,000 in unpaid support between the date the new version of the statute

was enacted and the date the defendant was indicted, the court rejected the defendant's ex

post facto argument based on the finding that the government established that the defendant

"willfully failed to pay after . . . the [new version of the statute] became effective."  Id. at 234.

To be sure, Kent's indictment charges that "[o]n or about May 25, 2007," Kent, "having

traveled in interstate and foreign commerce, knowingly failed to register and update a

registration" under SORNA.  This would seem to be fairly close to the "willful" failure to pay at

16

issue in <u>Wilson</u>, but there is an important distinction. The elements of knowingly failing to register and to update a registration after traveling in interstate commerce were all met long before SORNA was enacted and before the May 25, 2007 date specified in the indictment. Not only is this true because the parties concede that the conduct supporting the indictment could also have supported an indictment earlier, under the predecessor to § 2250, but it would also be true if the parties did not make this concession. According to the joint stipulation of facts, Kent knew that he was required to register as a sex offender when he moved to Louisiana. (Doc. 29, ¶ 8). As a consequence, he "knowingly" failed to register or update his registration under the "[r]egistry requirements for sex offenders" section of SORNA four days after moving to that state. 42 U.S.C. § 16913©). All of the elements of the indicted violation occurred on the fourth day after Kent moved to Louisiana, before SORNA was enacted.[5]

An additional problem with the prosecution of Kent on the facts of this case is that the plain language of the statute requires *prospective* travel by the defendant in order to accomplish a violation. When construing a criminal statute, the place to begin is with the plain language of the statute. Where "the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said." United States v. Steele, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) (citing Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149,

---

[5]42 U.S.C. § 16916, another section of SORNA, entitled "Periodic in person verification," provides "[a] sex offender shall appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered," periodically. There is no indication that the government relied on this section of SORNA to support its indictment or that, if the government did, whether such reliance would have been appropriate.

117 L.Ed.2d 391 (1992)).   Title 18, United States Code, Section 2250(a) provides, in pertinent

part:   "Whoever (1) is required to register under the Sex Offender Registration and Notification

Act: (2)  ... (B) *travels* in interstate or foreign commerce, . . . ; and  (3) knowingly *fails* to register

or update a registration as required by the Sex Offender Registration and Notification Act; shall

be fined under this title or imprisoned not more than 10 years, or both." (Emphasis supplied).

> "[I]n the case of statutory construction, [. . .] analysis begins with the language of
> the statute. And where the statutory language provides a clear answer, it ends
> there as well." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S.Ct.
> 755, 142 L.Ed.2d 881 (1999) (citation and quotations marks omitted); see also
> Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475, 112 S.Ct. 2589, 120
> L.Ed.2d 379 (1992) ("In a statutory construction case, the beginning point must
> be the language of the statute, and when a statute speaks with clarity to an issue[,]
> judicial inquiry into the statute's meaning, in all but the most extraordinary
> circumstance, is finished.").

Under the plain wording of the statute, in order for a violation to occur, both the travel and the

failing to register have to occur after the effective date of the statute.  To construe the statute

otherwise flies in the face of its plain meaning. "Congress' use of a verb tense is significant in

construing statutes." U.S. v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 1354 (1992).  In this

case, Congress did *not* say "having traveled" or " traveled".   The travel in this case clearly

occurred before the statute was passed.  See U.S. v. Smith 481 F. Supp. 2d 846  (E.D. Mich.

2007); U.S. v. Rich, 2007 WL 4292394, at *2  (W.D.Mo, Dec. 5, 2007).

## V.    CONCLUSION

For the foregoing reasons, Kent's motion is **GRANTED**.  A judgment of **ACQUITTAL**

is hereby entered, and the defendant is **ORDERED RELEASED** from custody.

**DONE and ORDERED** this 8th day of February, 2008.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE